Filed
D.C. Superior Court
04/13/2016 15:05PM
Clerk of the Court

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### *Civil Branch Division*

JAKAYARN D. SAMUELS                          *
4347 4th Street S.E. #6
Washington, DC 20032                         *

      *Plaintiff*

                             *     CASE NO.: <u>2016 CA 002707 B</u>

**v.**

SOUTHERN HILLS LP                            *
**Serve: National Corporate Research LTD.**
1025 Vermont Avenue, NW, Suite 1130
Washington, DC 20005                         *

      *Defendant*                       *

  *    *    *    *    *    *    *    *    *    *    *    *

### COMPLAINT

NOW COMES, Plaintiff, Jakayarn D. Samuels (hereinafter the "Plaintiff") by and through her attorneys, Hughie D. Hunt and Kemet Hunt Law Group, Inc., and sues Southern Hills LP (hereinafter the "Defendant") and for reasons states as follows:

### COUNT I
#### Negligence

1.    Plaintiff is a resident of Washington, District of Columbia, at all times relevant herein.

2.    Defendant is a company with its principal place of business in Washington, District of Columbia, at all times relevant herein.

3.    The Plaintiff asserts that she has complied with all conditions precedent to the filing of this action.

4.    Defendant's main course of business is as a landlord of apartment buildings.

5.    At all times relevant herein, Plaintiff is and continues to be the tenant of Defendant.

6.    That on March 8, 2010, Plaintiff entered into a valid lease with the Defendant (attached as Exhibit 1).

7.    Paragraph ten of the lease provides in pertinent part that landlord agrees to maintain all equipment and appliances in safe and working order, make necessary repairs with reasonable



promptness.

8.     Despite repeated demands, Defendant failed to fix the smoke detector in Plaintiff's apartment.

9.     Defendant failed to install a working fire extinguisher in Plaintiff's apartment.

10.     Defendant failed to have any safety measures or protocols in place in case of fire.

11.     Because Defendant's negligence, Plaintiff failed to get adequate and timely notice of the impending fire.

12.     On or about November 19, 2013, at approximately 5:00 p.m. Plaintiff was in her residence at 4347 4th Street, S.E. #6, Washington, DC 20032 (hereinafter the "Residence"), and was in the kitchen area cooking at the time of the incident.

13.     On or about the aforesaid date and time a fire began in the Residence.

14.     Plaintiff attempted to put out the fire but was unable to find any protective gear, any safety equipment, any fire retardants, and/or fire extinguishers in the Residence.

15.     As a result of Defendant's negligence, Plaintiff suffered burns to 18% of her body on her chest, torso, leg, and other areas on her body.

16.     Defendant had a duty of care to by law to provide fire extinguishers and other necessary tools in the apartment complexes and breached this duty of care by failing to provide the necessary equipment.

17.     Defendant's negligence proximately caused Plaintiff to suffer serious physical personal injury, including but not limited to, extreme and permanent pain and suffering, permanent and debilitating injury to her chest, body and limbs and to suffer great mental anguish, loss of wages in the past and future, loss of wage earning capacity, medical expenses

18.     and property damage. All Plaintiff's losses, past, present and prospective were, are and will be due solely and by reason of the negligence of Defendant without any negligence of Plaintiff contributing thereto.

WHEREFORE, Plaintiff, Jakayarn Samuels demands judgment against Defendant Southern Hills LP in whatever amount in excess of Ten Million Dollars ($10,000,000.00) to which she is found to be entitled, together with interest, costs, and attorneys fees.

## COUNT II

### Breach of Lease

19.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

20.     That Defendant entered into a valid lease with the Plaintiff.  Defendant breached the terms of the lease by failing to properly maintain all safety equipment in proper working order and by failing to maintain the property in a safe condition.

21.     The Defendant's breach of lease proximately caused Plaintiff to suffer serious physical personal injury, including but not limited to, extreme and permanent pain and suffering, permanent and debilitating injury to her chest, body and limbs and to suffer great mental anguish, loss of wages in the past and future, loss of wage earning capacity, medical expenses and property damage.  All Plaintiff's losses, past, present and prospective were, are and will be due solely and by reason of the negligence of Defendant without any negligence of Plaintiff contributing thereto.

WHEREFORE, Plaintiff, Jakayarn Samuels demands judgment against Defendant Southern Hills LP in whatever amount in excess of Ten Million Dollars ($10,000,000.00) to which she is found to be entitled, together with interest, costs, and attorneys fees.

Respectfully submitted,

**KEMET HUNT LAW GROUP, INC.**

/s/ Hughie D. Hunt
DC Bar #486347
Hughie D. Hunt, Esq.
4920 Niagara Road, Suite 206
College Park, MD 20740
(301) 982-0888
Attorney for Plaintiff
hhunt@kemethuntlaw.com

### DEMAND FOR JURY TRIAL

Plaintiff, Jakayarn Samuels demands a trial by jury as to all issues in this matter.

Hughie D. Hunt
Hughie D. Hunt, Esq.

MODEL LEASE FOR SUBSIDIZED PROGRAMS

1.  Parties and        The parties to this Agreement are _____
    Dwelling    Southern Hills LP            , referred to as the
    Unit:                  Landlord, and
    Jakayarn Samuels
                          referred to as the Tenant.  The Landlord leases
                          to the Tenant(S) unit number # 4347-06  , located
                          ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
    in the project known as Southern Hills LP

2.  Length of Time     The initial term of this Agreement shall begin
    (Term):            on 03/08/2010     and end on 03/07/2011    .  After
                       the initial term ends, the Agreement will
    continue for successive terms of one month each unless
    automatically terminated as permitted by paragraph 23 of this
    Agreement.

3.  Rent:              The Tenant agrees to pay $ 03/31/2010   for the
                       partial month ending on 0.00         .  After
                       that, Tenant agrees to pay a rent of $ 0.00     per
    month.  This amount is due on the first day of the month at
    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

    The Tenant understands that this monthly rent is less than the
    market (unsubsidized) rent due on this unit.  This lower rent is
    available either because the mortgage on this project is subsidized
    by the Department of Housing and Urban Development (HUD) and/or
    because HUD makes monthly payments to the landlord on behalf of the
    Tenant.  The amount, if any, that HUD makes available monthly on
    behalf of the Tenant is called the tenant assistance payment and is
    shown on the "Assistance Payment" line of the Owner's
    Certification of Compliance with HUD's Tenant Eligibility and Rent
    Procedures form which is Attachment No. 1 to this Agreement.

4.  Changes in the     The Tenant agrees that the amount of rent the
    Tenant's Share     Tenant pays and/or the amount of assistance that
    of the Rent:       HUD pays on behalf of the Tenant may be changed
                       during the term of this Agreement if:

    e.  HUD or the Contract Administrator (such as a Public Housing
        Agency) determines, in accordance with HUD procedures, that an
        increase in rents is needed;

    B.  HUD or the Contract Administrator changes any allowance for
        utilities or services considered in computing the Tenant's
        share of the rent;

    c.  the income, the number of persons in the Tenant's household or
        other factors considered in calculating the Tenant's rent
        change and HUD procedures provide that the Tenant's rent or
        assistance payment be adjusted to reflect the change;

d. changes in the Tenant's rent or assistance payment are required by HUD's recertification or subsidy termination procedures;

e. HUD's procedures for computing the Tenant's assistance payment or rent change; or

f. the Tenant fails to provide information on his/her income, family composition or other factors as required by the Landlord.

The Landlord agrees to implement changes in the Tenant's rent or tenant assistance payment only in accordance with the time frames and administrative procedures set forth in HUD's handbooks, instructions and regulations related to administration of multifamily subsidy programs.  The Landlord agrees to give the Tenant at least 30 days advance written notice of any increase in the Tenant's rent except as noted in paragraphs 11, 15 or 17.  The Notice will state the new amount the Tenant is required to pay, the date the new amount is effective, and the reasons for the change in rent.  The Notice will also advise the Tenant that he/she may meet with the Landlord to discuss the rent change.

5.  Charges for Late Payments and Returned Checks:   If the Tenant does not pay the full amount of the rent shown in paragraph 3 by the end of the 5th day of the month, the Landlord may Collect a fee of $5 on the 6th day of the month. Thereafter, the Landlord may collect $1 for each additional day the rent remains unpaid during the month it is due.
The Landlord  may not terminate this Agreement for failure to pay late charges, but may terminate this Agreement for non-payment of rent, as explained in paragraph 23.  The Landlord may collect a fee of $ 35.00 ___ on the second or any additional time a check is not honored for payment (bounces).  The charges discussed in this paragraph are in addition to the regular monthly rent payable by the Tenant.

6.  Condition of Dwelling Unit   By signing this Agreement, the Tenant acknowledges that the unit is safe, clean and in good condition.  The Tenant agrees that all Appliances and equipment in the unit are in good working order, except as described on the Unit Inspection Report which is Attachment No. 2 to this Agreement.  The Tenant also agrees that the Landlord has made no promises to decorate, alter, repair or improve the unit, except as listed on the Unit Inspection Report.

7.  Charges for Utilities and Services:   The following charts describe how the cost of utilities and services related to occupancy of the unit will be paid.  The Tenant agrees that these charts accurately describe the

utilities and services paid by the Landlord and

a. The Tenant must pay for the utilities in column (1).  Payments should be made directly to the appropriate utility company. The items in column (2) are included in the Tenant's rent.

(1)                                                      (2)

Put  "x" by any          Type of                Put "x" by any
Utility Tenant           Utility                 Utility Included
pays directly                                     in Tenant Rent

| Put "x" | Type of Utility | Put "x" Included |
|---|---|---|
| X | Heat | N/A |
| X | Lights, Electric | N/A |
| X | Cooking | N/A |
| N/A | Water | x  N/A |
| | Other (Specify. | |
| N/A | N/A | N/A |
| N/A | N/A | N/A |

b. The Tenant agrees to pay the Landlord the amount shown in column (3) on the date the rent is due.  The Landlord certifies that HUD had authorized him/her to collect the type of charges shown in column (3) and that the amounts shown in column (3) do not exceed the amounts authorized by HUD.

(3)

Show $ Amount Tenant
Pays to Landlord in
Addition to Rent

| | |
|---|---|
| Parking | $  N/A |
| Other (Specify.) | $  N/A |
| N/A | |
| N/A | $  N/A |

8. Security Deposits:  The Tenant has deposited $ 132.00_____ with the Landlord.  The Landlord will hold this security deposit for the period the Tenant occupies the unit.  After the Tenant has moved from the unit, the Landlord will determine whether the Tenant is eligible for a refund of any or all of the security deposit.  The amount of the refund will be determined in accordance with the following conditions and procedures.

a. The Tenant will be eligible for a refund of the security Deposit only if the Tenant provided the Landlord with the 30-day written notice of intent to move required by paragraph 23, unless the Tenant was unable to give the notice for reasons beyond his/her control.

b. After the Tenant has moved from the unit, the Landlord will inspect the unit and complete another Unit Inspection Report.

inspection, if the Tenant so requests.

c.  The Landlord will refund to the Tenant the amount of the
security deposit plus interest computed at 1.00 %, beginning
04/01/2011 , less any amount needed to pay the cost of:
3-8-10

   (1)  unpaid rent;

   (2)  damages that are not due to normal wear and tear and are
        not listed on the Unit Inspection Report;

   (3)  charges for late payment of rent and returned checks, as
        described in paragraph 5; and

   (4)  charges for unreturned keys, as described in paragraph 9.

d.  The Landlord agrees to refund the amount computed in paragraph
    8c within  45  days after the Tenant has permanently moved
    out of the unit, returned possession of the unit to the
    Landlord, and given his/her new address to the Landlord.  The
    Landlord will also give the Tenant a written list of charges
    that were subtracted from the deposit.  If the Tenant
    disagrees with the Landlord concerning the amounts deducted
    and asks to meet with the Landlord, the Landlord agrees to
    meet with the Tenant and informally discuss the disputed
    charges.

e.  If the unit is rented by more than one person, the Tenants
    agree that they will work out the details of dividing any
    refund among themselves.  The Landlord may pay the refund to
    any Tenant identified in Paragraph 1 of this Agreement.

f.  The Tenant understands that the Landlord will not count the
    Security Deposit towards the last month's rent or towards
    repair charges owed by the Tenant in accordance with
    paragraph 11.

9.  Keys and Locks:       The Tenant agrees not to install additional
                          or different locks or gates on any doors or
                          windows of the unit without the written
                          permission of the Landlord.  If the Landlord
                          approves the Tenant's request to install such
                          locks, the Tenant agrees to provide the
                          Landlord with a key for each lock.  When this
                          Agreement ends, the Tenant agrees to return
                          all keys to the dwelling unit to the
                          Landlord.  The Landlord may charge the Tenant
                          $ 25.00  for each key not returned.

10.  Maintenance:

    a.  The Landlord agrees to:

    (2)  maintain the common areas and facilities in a safe
         condition;

    (3)  arrange for collection and removal of trash and garbage;

    (4)  maintain all equipment and appliances in safe and working
         order;

    (5)  make necessary repairs with reasonable promptness;

    (6)  maintain exterior lighting in good working order:

    (7)  provide extermination services, as necessary; and

    (8)  maintain grounds and shrubs.

  b.   The Tenant agrees to:

    (1)  keep the unit clean;

    (2)  use all appliances, fixtures and equipment in a safe
         manner and only for the purposes for which they are
         intended;

    (3)  not litter the grounds or common areas of the project;

    (4)  not destroy, deface, damage or remove any part of the
         unit, common areas, or project grounds;

    (5)  give the Landlord prompt notice of any defects in the
         plumbing, fixtures, appliances, heating and cooling
         equipment or any other part of the unit or related
         facilities; and

    (6)  remove garbage and other waste from the unit in a clean
         and safe manner.

11.  Damages:              Whenever damage is caused by carelessness,
                           misuse, or neglect on the part of the Tenant,
                           his/her family or visitors, the Tenant
                           agrees to pay:

  a.   the cost of all repairs and do so within 30 days after
       receipt of the Landlord's demand for the repair charges; and

  b.   rent for the period the unit is damaged whether or not the
       unit is habitable.  The Tenant understands that HUD will not
       make assistance payments for any period in which the unit is
       not habitable.  For any such period, the Tenant agrees to
       pay the HUD-approved market rent rather than the Tenant rent

       shown in paragraph 3 of this agreement.

12.  Restrictions on      No alteration, addition, or improvements shall

prior consent of the Landlord in writing.  The Landlord agrees to provide reasonable accommodation to an otherwise eligible tenant's disability, including making changes to rules, policies, or procedures, and making and paying for structural alterations to a unit or common areas.  The Landlord is not required to provide accommodations that constitute a fundamental alteration to the Landlord's program or which would pose a substantial financial and administrative hardship.  See the regulations at 24 CFR Part 8.  In addition, if a requested structural modification does pose a substantial financial and administrative hardship, the Landlord must then allow the tenant to make and pay for the modification in accordance with the Fair Housing Act.

13. General Restrictions:

The Tenant must live in the unit and the unit must be the Tenant's only place of residence.  The Tenant shall use the premises only as a private dwelling for himself/herself and the individuals listed on the Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures, Attachment 1.  The Tenant agrees to permit other individuals to reside in the unit only after obtaining the prior written approval of the     Landlord.  The Tenant agrees not to:

a. sublet or assign the unit, or any part of the unit;

b. use the unit for unlawful purposes;

c. engage in or permit unlawful activities in the unit, in the common areas or on the project grounds;

d. have pets or animals of any kind in the unit without the prior written permission of the Landlord, but the landlord will allow the tenant to keep an animal needed as a reasonable accommodation to the tenant's disability, and will allow animals to accompany visitors with disabilities who need such animals as an accommodation to their disabilities; or

e. make or permit noises or acts that will disturb the rights or comfort of neighbors.  The Tenant agrees to keep the volume of any radio, phonograph, television or musical instrument at a level which will not disturb the neighbors.

14. Rules:    The Tenant agrees to obey the House Rules which are

Attachment No. 3 to this Agreement.  The tenant agrees to obey additional rules established after the effective date of this Agreement if:

cleanliness of the building and the safety, comfort and convenience of the Tenants; and

b.  the Tenant receives written notice of the proposed rule at least 30 days before the rule is enforced.

15.  Regularly Scheduled Recertifications:   Every year around the first day of November , the Landlord will request the Tenant to report the income and composition of the Tenant's household and to supply any other information required by HUD for the purposes of determining the Tenant's rent and assistance payment, if any.  The Tenant agrees to provide accurate statements of this information and to do so by the date specified in the Landlord's request.  The landlord will verify the information supplied by the Tenant and use the verified information to recompute the amount of the Tenant's rent and assistance payment, if any.

a.  If the Tenant does not submit the required recertification information by the date specified in the Landlord's request, the Landlord may impose the following penalties.  The Landlord may implement these penalties only in accordance with the administrative procedures and time frames specified in HUD's regulations, handbooks and instructions related to the administration of multifamily subsidy programs.

(1)  Require the Tenant to pay the higher, HUD-approved market rent for the unit.

(2)  Implement any increase in rent resulting from the recertification processing without providing the 30-day notice otherwise required by paragraph 4 of this Agreement.

b.  The Tenant may request to meet with the Landlord to discuss any change in rent or assistance payment resulting from the recertification processing.  If the Tenant requests such a meeting, the Landlord agrees to meet with the Tenant and discuss how the Tenant's rent and assistance payment, if any, were computed.

16.  Reporting Changes Between Regularly Scheduled Recertifications:

a.  If any of the following changes occur, the Tenant agrees to advise the Landlord immediately.

(1)  Any household member moves out of the unit.

(2)  An adult member of the household who was reported as unemployed on the most recent certification or recertification obtains employment.

      (3)  The household's income cumulatively increases by
           $200 or more a month.

  b.   The Tenant may report any decrease in income or any
      change in other factors considered in calculating the

      Tenant's rent.  Unless the Landlord has confirmation
      that the decrease in income or change in other factors
      will last less than one month, the Landlord will verify
      the information and make the appropriate rent reduction.
      However, if the Tenant's income will be partially or
      fully restored within two months, the Landlord may delay
      the certification process until the new income is known,
      but the rent reduction will be retroactive and the
      Landlord may not evict the Tenant for nonpayment of rent
      due during the period of the reported decrease and the
      completion of the certification process.  The Tenant has
      thirty days after receiving written notice of any rent
      due for the above described time period to pay or the
      Landlord can evict for nonpayment of rent.  (Revised
      3/22/89)

  c.   If the Tenant does not advise the Landlord of these
      interim changes, the Landlord may increase the Tenant's
      rent to the HUD-approved market rent.  The Landlord may
      do so only in accordance with the time frames and
      administrative procedures set forth in HUD's
      regulations, handbooks and instructions on the
      administration of multifamily subsidy programs.

  d.   The Tenant may request to meet with the Landlord to
      discuss how any change in income or other factors
      affected his/her rent or assistance payment, if any.
      If the Tenant requests such a meeting, the Landlord
      agrees to meet with the Tenant and explain how the
      Tenant's rent or assistance payment, if any, was
      computed.

17.  Removal of Subsidy:

  a.   The Tenant understands that assistance made available
      on his/her behalf may be terminated if events in either
      items 1 or 2 below occur.  Termination of assistance
      means that the Landlord may make the assistance
      available to another Tenant and the Tenant's rent will
      be recomputed. In addition, if the Tenant's assistance
      is terminated because of criterion (1) below, the
      Tenant will be required to pay the HUD-approved market
      rent for the unit.

      (1)The Tenant does not provide the Landlord with
         the information or reports required by
         paragraph 15 or 16 within 10 calendar days
         after receipt of the Landlord's notice of
         intent to terminate the Tenant's assistance
         payment.

(2) The amount the Tenant would be required to pay towards rent and utilities under HUD rules and regulations equals the Family Gross Rent shown on Attachment 1.

b.   The Landlord agrees to give the Tenant written notice of the proposed termination.  The notice will advise the Tenant that, during the ten calendar days following the date of the notice, he/she may request to meet with the Landlord to discuss the proposed termination of assistance.  If the Tenant requests a discussion of the proposed termination, the Landlord agrees to meet with the Tenant.

c.   Termination of assistance shall not affect the Tenant's other rights under this Agreement, including the right to occupy the unit.  Assistance may subsequently be reinstated if the Tenant submits the income or other data required by HUD procedures, the Landlord determines the Tenant is eligible for assistance, and assistance is available.

18. Tenant
    Obligation
    To Repay:

If the tenant submits false information on any application, certification or request for interim adjustment or does not report interim changes in family income or other factors as required by paragraph 16 of this Agreement, and as a result, is charged a rent less than the amount required by HUD's rent formulas, the Tenant agrees to reimburse the Landlord for the difference between the rent he/she should have paid and the rent he/she was charged.  The Tenant is not required to reimburse the Landlord for undercharges caused solely by the Landlord's failure to follow HUD's procedures for computing rent or assistance payments.

19. Size of
    Dwelling

The Tenant understands that HUD requires the Landlord to assign units in accordance with the Landlord's written occupancy standards.  These standards include consideration of unit size, relationship of family members, age and sex of family members and family preference.  If the Tenant is or becomes eligible for a different size unit, and the required size unit becomes available, the Tenant agrees to:

a.   move within 30 days after the Landlord notifies him/her that unit of the required size is available within the project; or

b.   remain in the same unit and pay the HUD-approved market rent.

20.  Access by Landlord:

hours, to provide reasonable advance notice of his/her intent
to enter the unit, and to enter the unit only after receiving
the Tenant's consent to do so, except when urgency situations
make such notices impossible or except under paragraph (c)
below.

b.  The Tenant consents in advance to the following entries into
the unit:

   (i)   The tenant agrees to permit the Landlord, his/her
         agents or other persons, when authorized by the
         Landlord, to enter the unit for the purpose of making
         reasonable repairs and periodic inspections.

   (ii)  After the Tenant has given a notice of intent to move,
         the Tenant agrees to permit the Landlord to show the
         unit to prospective tenants during reasonable hours.

c.  If the Tenant moves before this Agreement ends, the Landlord
may enter the unit to decorate, remodel, alter or otherwise
prepare the unit for re-occupancy.

| | | |
|---|---|---|
| 21. | Discrimination Prohibited: | The Landlord agrees not to discriminate based upon race, color, religion, creed, National origin, sex, age, familial status, and disability. |
| 22. | Change in Rental Agreement: | The Landlord may, with the prior approval of HUD, change the terms and conditions of this Agreement.  Any changes will become effective only at the end of the initial term or a successive term.  The Landlord must notify the Tenant of any change and must offer the Tenant a new Agreement or an amendment to the existing Agreement.  The Tenant must receive the notice at least 60 days before the proposed effective date of the change.  The Tenant may accept the changed terms and conditions by signing the new Agreement or the amendment to the existing Agreement and returning it to the Landlord.  The Tenant may reject the changed terms and conditions by giving the Landlord written notice that he/she intends to terminate the tenancy.  The Tenant must give such notice at least 30 days before the proposed change will go into effect.  If the |
| | | Tenant does not accept the amended agreement, the Landlord may require the Tenant to move from the project, as provided in paragraph 23. |
| 23. | Termination of Tenancy: | |

Landlord 30-days written notice before moving from the unit.

b.   Any termination of this Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement.

c.   The Landlord may terminate this Agreement for the following reasons:

1.   the Tenant's material noncompliance with the terms of this Agreement;

2.   the Tenant's material failure to carry out obligations under any State Landlord and Tenant Act;

3.   drug related criminal activity engaged in on or near the premises, by any tenant, household member, or guest, and any such activity engaged in on the premises by any other person under the tenant's control;

4.   determination made by the Landlord that a household member is illegally using a drug;

5.   determination made by the Landlord that a pattern of illegal use of a drug interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents;

6.   criminal activity by a tenant, any member of the tenant's household, a guest or another person under the tenant's control:

    (a) that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents (including property management staff residing on the premises); or

    (b) that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises;

7.   if the tenant is fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees, or that in the case of the State of New Jersey, is a high misdemeanor;

8.   if the tenant is violating a condition of probation or parole under Federal or State law;

9. determination made by the Landlord that a household
   member's abuse or pattern of abuse of alcohol threatens
   the health, safety, or right to peaceful enjoyment of
   the premises by other residents;

10. if the Landlord determines that the tenant, any member
    of the tenant's household, a guest or another person
    under the tenant's control has engaged in the criminal
    activity, regardless of whether the tenant, any member
    of the tenant's household, a guest or another person
    under the tenant's control has been arrested or
    convicted for such activity.

d. The Landlord may terminate this Agreement for other good
   cause, which includes, but is not limited to, the tenant's
   refusal to accept change to this agreement. Terminations for
   "other good cause" may only be effective as of the end of any
   initial or successive term.

The term material noncompliance with the lease includes:   (1)
one or more substantial violations of the lease;  (2) repeated
minor violations of the lease that (a) disrupt the livability of
the project; (b) adversely affect the health or safety of any
person or the right of any tenant to the quiet enjoyment to the
leased premises and related project facilities, (c) interfere
with the management of the project, or (d) have an adverse
financial effect on the project (3) failure of the tenant to
timely supply all required information on the income and
composition, or eligibility factors, of  the tenant household
(including, but not limited to, failure to meet the disclosure
and verification requirements for Social Security Numbers, or
failure to sign and submit consent forms for the obtaining of
wage and claim information from State Wage Information Collection
Agencies), and  (4) Non-payment of rent or any other financial
obligation due under the lease beyond any grace period permitted
under State law.  The payment of rent or any other financial
obligation due under the lease after the due date but within the
grace period permitted under State law constitutes a minor
violation.

e.  If the Landlord proposes to terminate this Agreement, the
    Landlord agrees to give the Tenant written notice and the
    grounds for the proposed termination.  If the Landlord is
    terminating this agreement for "other good cause," the
    termination notice must be mailed to the Tenant and hand-

    delivered to the dwelling unit in the manner required by HUD
    at least 30 days before the date the Tenant will be required
    to move from the unit and in accordance with State law
    requirements.  Notices of proposed termination for other
    reasons must be given in accordance with any time frames set
    forth in State and local law.  Any HUD-required notice period
    may run concurrently with any notice period required by State
    or local law.  All termination notices must:

    • specify the date this Agreement will be terminated;

- state the grounds for termination with enough detail for the Tenant to prepare a defense;

- advise the Tenant that he/she has 10 days within which to discuss the proposed termination of tenancy with the
- Landlord.  The 10-day period will begin on the earlier of the date the notice was hand-delivered to the unit or the day after the date the notice is mailed.  If the Tenant requests the meeting, the Landlord agrees to discuss the proposed termination with the Tenant; and

- advise the Tenant of his/her right to defend the action in court.

    f.    If an eviction is initiated, the Landlord agrees to rely only upon those grounds cited in the termination notice required by paragraph e.

| | | |
|---|---|---|
| 24. | Hazards: | The Tenant shall not undertake, or permit his/her family or guests to undertake, any hazardous acts or do anything that will increase the project's insurance premiums.  Such action constitutes a material non-compliance.  If the unit is damaged by fire, wind, or rain to the extent that the unit cannot be lived in and the damage is not caused or made worse by the Tenant, the Tenant will be responsible for rent only up to the date of the destruction.  Additional rent will not accrue until the unit has been repaired to a livable condition. |
| 25. | Penalties for Submitting False Information: | Knowingly giving the Landlord false information regarding income or other factors considered in determining Tenant's eligibility and rent is a material noncompliance with the lease subject to termination of tenancy.  In addition, the Tenant could become subject to penalties available under Federal law.  Those penalties include fines up to $10,000 and imprisonment for up to five years. |
| 26. | Contents of this Agreement: | This Agreement and its Attachments make up the entire agreement between the<br><br>Landlord and the Tenant regarding the unit. If any Court declares a particular provision of this Agreement to be invalid or illegal, all other terms of this Agreement will remain in effect and both the Landlord and the Tenant will continue to be bound by them. |
| 27. | Attachments to the Agreement: | The Tenant certifies that he/she has received a copy of this Agreement and the following Attachments to this Agreement and understands that these Attachments are |

    a. Attachment No. 1 – Owner's Certification of Compliance with
       HUD's Tenant Eligibility and Rent Procedures, form HUD-50059

    b. Attachment No. 2 – Unit Inspection Report.

    c. Attachment No. 3 – House Rules (if any).

    d. Attachment No. 4 – Form HUD-91067 (VAWA Addendum).

28. Tenants' rights to organize:  Landlord agrees to allow tenant
and tenant organizers to conduct on the property the activities
related to the establishment or operation of a tenant
organization set out in accordance with HUD requirements.

29. Tenant Income Verification: The Tenant must promptly provide the
Landlord with any letter or other notice by HUD to a member of
the family that provides information concerning the amount or
verification of family income in accordance with HUD
requirements.

30. The lease agreement will terminate automatically, if the Section
8 Housing Assistance contract terminates for any reason.

31. Signatures:

TENANT
BY:

1. _____   3/8/10
                                    Date Signed

2. _____   _____
                                    Date Signed

3. _____   _____
                                    Date Signed

LANDLORD
BY:

_____   3/8/10
                                    Date Signed

Attachment 2
OMB Approval No. 2502-0204

## LEASE ADDENDUM

### VIOLENCE AGAINST WOMEN AND JUSTICE DEPARTMENT REAUTHORIZATION ACT OF 2005

| TENANT<br>Jakayam . Samuels | LANDLORD | UNIT NO. & ADDRESS |
|---|---|---|

This lease addendum adds the following paragraphs to the Lease between the above referenced Tenant and Landlord.

### Purpose of the Addendum

The lease for the above referenced unit is being amended to include the provisions of the Violence Against Women and Justice Department Reauthorization Act of 2005 (VAWA).

### Conflicts with Other Provisions of the Lease

In case of any conflict between the provisions of this Addendum and other sections of the Lease, the provisions of this Addendum shall prevail.

### Term of the Lease Addendum

The effective date of this Lease Addendum is 3/8/2010_____. This Lease Addendum shall continue to be in effect until the Lease is terminated.

### VAWA Protections

1. The Landlord may not consider incidents of domestic violence, dating violence or stalking as serious or repeated violations of the lease or other "good cause" for termination of assistance, tenancy or occupancy rights of the victim of abuse.
2. The Landlord may not consider criminal activity directly relating to abuse, engaged in by a member of a tenant's household or any guest or other person under the tenant's control, cause for termination of assistance, tenancy, or occupancy rights if the tenant or an immediate member of the tenant's family is the victim or threatened victim of that abuse.
3. The Landlord may request in writing that the victim, or a family member on the victim's behalf, certify that the individual is a victim of abuse and that the Certification of Domestic Violence, Dating Violence or Stalking, Form HUD-91066, or other documentation as noted on the certification form, be completed and submitted within 14 business days, or an agreed upon extension date, to receive protection under the VAWA. Failure to provide the certification or other supporting documentation within the specified timeframe may result in eviction.

_____ 
Tenant

3/8/10
Date

8/8/10

**Public reporting burden** - HUD is not requesting approval of any burden hours for the model leases since use of leases are a standard business practice in the housing rental industry. This information is required to obtain benefits. The request and required supporting documentation are sent to HUD or the Contract Administrator (CA) for approval. The lease is a contract between the owner of the project and the tenant(s) that explains the terms for residing in the unit. Leases are a standard business practice in the housing rental industry. Owners are required to use the HUD model lease which includes terms normally covered by leases used in the housing rental industry plus terms required by HUD for the program under which the project was built and/or the program providing rental assistance to the tenants.

This information is authorized by 24 CFR 5.360, 236.750, 880.606, 883.701, 884.215, 886.127, 891.425, 891.625 and 891.765 cover lease requirements and provisions. This information is considered non-sensitive and does not require any special protection.